IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KOLBE & KOLBE HEALTH AND
WELFARE BENEFIT PLAN and
KOLBE & KOLBE MILLWORK CO., INC.,

                Plaintiffs,                OPINION AND ORDER

    v.                                       09-cv-205-bbc

THE MEDICAL COLLEGE OF
WISCONSIN, INC. and CHILDREN'S
HOSPITAL OF WISCONSIN, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs Kolbe & Kolbe Health and Welfare Benefit Plan and Kolbe & Kolbe Millwork Co., Inc. sued defendants The Medical College of Wisconsin, Inc. and Children's Hospital of Wisconsin, Inc. under the Employee Retirement Income Security Act, federal common law and state common law. Plaintiffs sought reimbursement of approximately $1,672,000 they had paid to defendants for medical costs incurred by K.G., a minor child of an employee of plaintiff Kolbe Millwork. After extensive briefing, several revisions of the complaint and four separate opinions, the case was dismissed and judgment was entered in favor of defendants. Defendants have now moved for attorney fees and costs under 29

1

U.S.C. § 1132(g)(1) of ERISA, which authorizes courts to allow either party a reasonable attorney fee and costs in any action brought under the Act by a participant, beneficiary or fiduciary. Defendants assert that plaintiffs' suit was not substantially justified. I conclude that, for the most part, defendants are correct and that plaintiffs would have known that their claims were without merit had they reviewed the law carefully. In one respect, however, I am persuaded that the law was sufficiently unclear that sanctions would be improper. Reasonable persons might have advanced and pursued the same claim.

OPINION

A. Applicable Law

The ERISA statute does not set forth any standard for determining whether fees should be awarded. The Court of Appeals for the Seventh Circuit has held that it creates a "modest presumption" in favor of awarding fees to the prevailing party. Senese v. Chicago Area I.B. of T. Pension Fund, 237 F.3d 819, 826 (7th Cir. 2001); see also Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co., 57 F.3d 608, 617 (7th Cir.1995). In numerous cases, the court has said that "[a]n award of fees to a successful defendant may be denied if the plaintiff's position was both 'substantially justified'—meaning something more than non-frivolous, but something less than meritorious—and taken in good faith, or if special circumstances make an award unjust." Senese, 237 F.3d at 826 (citing Harris

2

Trust, 57 F.3d at 616-17 & n.4); Trustmark Life Ins. Co. v. University of Chicago Hospitals, 207 F.3d 876, 884 (7th Cir.2000)).

In some cases, the court of appeals has approved a multi-factored test for the determination. E.g., Brewer v. Protexall, Inc., 50 F.3d 453, 458 (7th Cir. 1995). The factors include: (1) the degree of the offending party's culpability or bad faith; (2) the offending party's ability to satisfy an award of fees; (3) whether the award of fees would deter other persons under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions. Senese, 237 F.3d at 826.

In other instances, the court has broken both tests down to the question: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472, 478 (7th Cir. 1998). At least one court has expressed dissatisfaction with this version of the test. In Orth v. Wisconsin State Employees Union, 2007 WL 2042252 (E.D. Wis. July 11, 2007), the court observed that the dichotomy between "good faith" suits and suits brought to harass did not account for the many cases that fell into the gray area between the two, noting that a party's argument "may be a clear loser without necessarily being offered in bad faith or with harassing intent." Id. at 2. In the case before it, the court found that the union had not acted in bad faith but had advanced arguments that "flew in the face of what [the

3

court] concluded was clear contractual language." Id. On appeal, the court of appeals affirmed the district court's award of attorney fees to the plaintiffs. Orth v. Wisconsin State Employees Union Council 24, 546 F.3d 868, 874-875 (7th Cir. 2008) ("The judge made no mistake. No careful lawyer could have thought this a case of latent ambiguity or valid modification. And for the defendants to use their deceptive conduct toward the retired employees as a basis for trying to duck liability was shabby. The only questionable aspect of the district judge's opinion is his statement that the defendants were acting throughout in good faith.").

### B. The Case for a Fee Award

Like Orth, this case falls into a gray area. I would be hard pressed to characterize it as "harassment," which implies a purposeful intent to cause trouble and expense for one's opponent, but I am convinced that a closer look at the applicable law would have alerted plaintiffs' counsel to the lack of merit of most of their arguments. Moreover, there is an element of "shabbiness" about plaintiffs' conduct. In the nearly eight months it took them to reach a determination of K.G.'s eligibility for plan benefits, defendants expended more than $1,672,000 in medical services on her behalf, acting on the good faith belief that they would be paid for those services. Plaintiffs have never alleged that the services provided were improper or unnecessary, that they were not provided or that the fees charged were

4

unreasonable. Nor have they alleged that they ever indicated to defendants that K.G. might not be eligible for services.

If plaintiffs had not paid K.G.'s bills before finding her ineligible, it is arguable that defendants could have sued successfully in state court for payment on the grounds of negligent misrepresentation and estoppel. Franciscan Skemp Healthcare, Inc. v. Central States Joint Board Health & Welfare Trust Fund, 538 F.3d 594 (7th Cir. 2008), suggests that this is a possibility. In Franciscan Skemp, the plaintiff hospital had called the defendant health care benefits plan to verify that the hospital's patient was a covered person and had been assured that she was. When the plan tried to remove the case to federal court, alleging ERISA preemption, it was rebuffed on the ground that the claims asserted by the plaintiff hospital did not implicate ERISA but were state law claims of negligent misrepresentation and estoppel independent of any duty owed under ERISA. Id. at 598.

1. Claim one

Of the three claims that plaintiffs pursued, the first, that plaintiffs were entitled to relief under § 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), was clearly without merit. The two applicable Supreme Court cases, Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 2002), and Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006), made it plain that an insurer or a plan could not sue under § 502(a)(3) to enforce a legal obligation

5

to pay money. In an order entered on October 6, 2009, I explained why it was unlikely that plaintiffs' claim could not succeed under § 502(a)(3): the statute permits suits for equitable relief only and allows recovery of money from a third party only if the plaintiff can either trace the money to a particular share of a particular fund to which he is entitled or show that an equitable lien was created by agreement or assignment. Because plaintiffs had alleged that they could show an equitable lien by agreement, I gave them an opportunity to do so before ruling on the viability of their § 502(a)(3) claim. I warned them, however, that it was not plausible that they would be able to show that defendants' provider agreements would support plaintiffs' characterization of them as supporting the assertion of an equitable lien. Oct. 6, 2009 order, dkt. #25, at 15.

Undeterred, plaintiffs submitted copies of various agreements, none of which supported their allegations. They could point to nothing in any agreement that referred to overpayments, plaintiff's right to recover them or defendants' duty to return specific funds to plaintiffs, much less to a provision showing defendants' consent to the imposition of a lien or trust upon particular funds in their possession.

In their brief in opposition to the award of fees, plaintiffs contend that their § 502(a)(3) claim was distinguishable from those in Great-West and Sereboff because it concerned reimbursement from a provider rather than repayment from a plan beneficiary who had received funds from other sources to cover her medical expenses. Plaintiffs never

6

made this argument when it briefed its § 502(a)(3) claim, but the omission makes no difference. The holdings in Great-West and Sereboff were directed to the nature of the relief available under § 502((a)(3) and not to the identity of the defendants. Neither case held that the exclusively equitable relief available under the statute applies only to claims for repayment from plan participants or their dependents.

Plaintiffs also argue that two cases decided by the Court of Appeals for the Seventh Circuit before Great-West and Sereboff were decided supported their pursuit of their claim: Trustmark Life Ins. Co. v. University of Chicago Hospitals, 207 F.3d 876 (7th Cir. 2000), and Central States, Southeast and Southwest Areas Health & Welfare Fund v. Neurobehavioral Associates, 53 F.3d 172 (7th Cir. 1995). Plaintiffs did not cite these cases in their brief in opposition to defendants' motion to dismiss their ERISA claim, but, as I explained in the October 6, 2009 opinion, neither case would have aided their position. In both cases, the court had held, without analysis, that an action for restitution against a provider is an equitable one. Now that Great-West and Sereboff have established that it is not, the cases cannot support an ordinary claim for reimbursement or restitution, whether or not the court of appeals overrules the cases explicitly or not.

Plaintiffs' refusal to accept the holdings in Great-West and Sereboff was compounded by their pursuit of their allegation that their claim for equitable relief was supported by their various agreements with the agencies that contracted with defendants to provide services.

7

Even a cursory review of those agreements would have made it plain that nothing in them provided any support for their § 502(a)(3) claim.

2. Claim two

Despite losing on their § 502(a)(3) claim, plaintiffs pursued their second claim, which was denominated as a federal common law claim against defendants for unjust enrichment. Although I found this claim precluded by ERISA, which allows only federal common law claims that fill gaps in the statutory scheme, not those that would circumvent the scheme by creating a new remedy, Feb. 9, 2010 Op. & Order, Dkt. #38, this finding was not so obvious as it had been for plaintiffs' first claim under § 502(a)(3). In fairness, I cannot say that plaintiffs had no substantial justification for attempting to pursue it.

3. Claim three

Plaintiffs' third claim was based on a theory that defendants had breached their physician and provider agreements with two independent groups that also had service or member agreements with plaintiffs. After more briefing by the parties, I dismissed this claim on the ground that it was preempted by ERISA. Apr. 29, 2010 Op. & Order, dkt. #47.

Section 514 of ERISA, 29 U.S.C. § 1144(a), preempts all state law claims "insofar as they may now or hereafter relate to any employee benefit plan." Plaintiffs tried to

8

differentiate their claim from their original § 502(a)(3) claim, but they failed to make the basic showing that the claim was entirely independent of the plan. It was evident that the claim related to the plan because any determination of the disputed factual issues underlying the claim would require interpretation of the plan. For example, deciding whether defendants should return any payments to plaintiffs required determining whether plaintiffs had been correct in finding that K.G. was not a covered person under plaintiffs' plan; in other words, it would be necessary to interpret the plan. As plaintiffs themselves pointed out, Plt.s' Br., dkt. #45, at 15-16, issues of conflict preemption such as this one require the court to inquire whether the claim at issue implicates "the relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries." Plaintiffs' assertion that they were interested only in the recovery of money did not mean that the ERISA relationships—or the provisions of the ERISA plan—could be ignored

Even if the state law claim had not been preempted, it was a losing argument from the beginning, as plaintiffs should have realized. There were no agreements between the parties in existence. Plaintiffs argued that they were third party beneficiaries of agreements between defendants and the agencies plaintiffs had agreements with, but they have yet to point to any provision in the physician and provider agreements or the service and member agreements requiring defendants to reimburse plaintiffs for services actually provided to a person purportedly covered under plaintiffs' plan.

9

In summary, I conclude that plaintiffs were not substantially justified in advancing their claim of an ERISA violation or their state common law claim of breach of contract. Neither the law nor the facts provided any support for these claims.

4. Five-factor test

Looking at the case another way, under the five-factor test used in some instances, I am persuaded that (1) plaintiffs did not act in good faith in bringing their first and third claims. I find also that (2) plaintiffs are able to satisfy an award of fees. They have made no showing to the contrary, although they have argued that the court should give more leeway to plans and their administrators, in order to protect plan assets for the participants. That might be persuasive in another factual context, but in this case, defendants are non-profit hospitals with their own claims to protection of their financial resources and plaintiffs have failed to show that they acted promptly or professionally to assess K.G.'s eligibility for services.

As to (3) deterrence, if the award of fees in this case would promote quicker and more accurate beneficiary determinations, all of the players in the ERISA scheme would be better served. (4) Although there is no benefit conferred on plan members, if this were the deciding factor, courts could not grant any requests for fee awards from wronged parties other than

10

plans. Finally, as I have explained, (5) the relative merits of the parties' positions favor defendants.

5. Other considerations

In deciding that defendants are entitled to a partial award of attorney fees, I have not taken in account the parties' settlement efforts or lack of them; plaintiffs' alleged intent to pursue a state court action after this action is dismissed; or the fact that the case was closed on a motion to dismiss. I do not find any of these considerations relevant to the decision.

D. Amount of Award

Defendants have not submitted an itemized fee request, so I cannot determine what fees they incurred in defending against the two claims that I find were brought without substantial justification. They may have until July 1, 2010 in which to do so. Plaintiffs may have until July 15, 2010 in which to object to the attribution of fees and to the amounts.

ORDER

IT IS ORDERED that defendants The Medical College of Wisconsin, Inc. and Children's Hospital of Wisconsin, Inc. are awarded attorney fees and costs for defending against the claims asserted by plaintiffs Kolbe & Kolbe Health and Welfare Benefit Plan and

11

Kolbe & Kolbe Millwork Co., Inc. under ERISA (count I of the complaint) and under state common law (count III). Defendants are to submit an itemized fee request no later than July 1, 2010; plaintiffs may have until July 15, 2010, in which to object to the fees requested.

        Entered this 17th day of June, 2010.

                              BY THE COURT:
                              /s/
                              BARBARA B. CRABB
                              District Judge